## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CENTER FOR SCIENCE IN THE
    PUBLIC INTEREST,
1220 L St., N.W., Suite 300
Washington, D.C. 20005, and

Case No. 19-1004

CHESAPEAKE INSTITUTE FOR
    LOCAL SUSTAINABLE FOOD &
    AGRICULTURE, D/B/A HEALTHY
    SCHOOL FOOD MARYLAND,
3502 Softwood Terrace
Montgomery County
Olney, MD 20832-2200,

*Plaintiffs*,

vs.

SONNY PERDUE, Secretary of the U.S.
    Department of Agriculture, in his
    Official Capacity,
1400 Independence Ave., S.W.
Washington, D.C. 20250,

BRANDON LIPPS, Administrator of the
    Food and Nutrition Service, in his
    Official Capacity,
3101 Park Center Dr.
Alexandria, VA 22302,

UNITED STATES DEPARTMENT OF
    AGRICULTURE,
1400 Independence Ave., S.W.
Washington, D.C. 20250, and

FOOD AND NUTRITION SERVICE,
    U.S. Department of Agriculture,
3101 Park Center Dr.
Alexandria, VA 22302,

*Defendants*.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Center for Science in the Public Interest and Chesapeake Institute for Local Sustainable Food & Agriculture, d/b/a Healthy School Food Maryland (collectively "Plaintiffs") bring this action under the Administrative Procedure Act to challenge a final rule promulgated by the United States Department of Agriculture ("USDA" or the "Department") in December 2018 that weakened nutrition standards at the heart of the National School Lunch and Breakfast Programs (collectively "Programs"). These Programs implement a comprehensive and carefully considered Congressional scheme that requires, among other things, that food served to the nation's children under the Programs meet standards calibrated to established nutrition science. Together, the Programs provide more than 30 million school children, three-quarters of whom are poor and low-income, with healthy and nutritious food every school day—food which often comprises up to half of a participating child's total daily caloric intake. As such, the Programs play a critical role in shaping the diets of American children and addressing the roots of diet-related diseases, beginning at a young age.

In 2012, pursuant to the landmark Healthy, Hunger-Free Kids Act of 2010, USDA promulgated nutrition standards that (among other things) required schools participating in the Programs to: (1) make phased reductions in the sodium content of school meals from what were (and today remain) dangerously high levels and (2) increase the amount of nourishing whole grains served to students. Consistent with its then-longstanding interpretation of governing statutes, the Department characterized both changes as implementing a Congressional mandate to promulgate regulations setting nutrition standards that are based on and consistent with nutrition science, as set forth in the Dietary Guidelines for Americans (the "Guidelines") and the Report issued by the Food and Nutrition Board of the National Research Council of the National

Academy of Sciences (the "IOM Report").  The Guidelines—dietary recommendations that Congress requires USDA and the Department of Health and Human Services to issue every five years—are based on a comprehensive review of relevant scientific evidence.  They set forth daily recommendations for salt and whole grains consumption based on evidence concerning the effect of these and other foods or nutrients on the risk of adverse health conditions, including heart disease, hypertension, heart failure, kidney disease, and stroke.  The IOM Report provided specific guidance to USDA on how the agency could align school nutrition standards with the Dietary Guidelines.

In the rule challenged here, Child Nutrition Programs: Flexibilities for Milk, Whole Grains, and Sodium Requirements, 83 Fed. Reg. 63,775 (Dec. 12, 2018) (the "School Nutrition Rollback Rule" or the "Rollback Rule"), the Department eviscerated these standards, delaying by five years the second phase of sodium reductions, eliminating altogether a final sodium reduction target needed to achieve the limits based on the Guidelines, and reducing by one-half the amount of whole grains required to be served by the Programs so that whole grain levels likewise no longer meet those in the Dietary Guidelines.

In so doing, USDA unlawfully departed from Congress's unambiguous directive that it determine school meal requirements based on nutrition science, and instead relied on impermissible and unsound extra-statutory factors such as students' perceived taste preferences for less healthy foods and some schools' desire for operational "flexibility."  The Department also failed to explain, or even acknowledge, that its actions constituted a fundamental change in its interpretation of key statutes, by which it untethered the nutrition standards from the Guidelines.  Further, the Department provided no adequately reasoned explanation for modifying existing standards.  Nor did the Department adequately consider or respond to a wealth of

evidence in the record or comments—from parents, advocacy groups, school nutrition experts, researchers, and food manufacturers alike—that opposed weakening the standards.  Among other things, those comments suggested alternative approaches that would have preserved the standards' scientific integrity, while addressing operational and practical concerns and protecting the health of children.  Finally, the Department employed a deeply flawed administrative process that deprived the public of fair notice of the nature and scope of the changes adopted in the final rule—all in violation of the basic dictates of the Administrative Procedure Act.  Accordingly, the Court should declare the Rollback Rule unlawful and set it aside, with specific direction to the agency to issue an amended rule in accordance with its statutory duty.

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because Plaintiff Chesapeake Institute for Local Sustainable Food & Agriculture resides in this district.

**PARTIES**

3.      Plaintiff Center for Science in the Public Interest ("CSPI") is a nonprofit, nonpartisan organization with 483,500 members that is headquartered at 1220 L Street, N.W., Washington, D.C. 20005.  Founded in 1971, CSPI is a science-based consumer advocacy organization with twin missions to conduct innovative research and advocacy in health and nutrition, and to provide consumers with current, objective information about their health and well-being.  In furtherance of these missions, CSPI has long worked to support Americans' ability to eat well by transforming the food environments in schools, restaurants, grocery stores, and public places.  A particular focus of CSPI's efforts has been to improve school meal

4

nutrition through a variety of activities and services, including: educating its membership and the public about the importance of school nutrition; disseminating information on healthy school meals to state and local governments and to school-focused organizations, including nutrition and public health-focused organizations that work with schools; and advising partners who work with schools and food service professionals on ways to improve the nutritional content of school meals, and to maintain student participation and/or revenue in a healthy school meal program.

4.      CSPI has worked to improve school foods for more than 40 years and spent the last three decades trying to ensure that school meals meet the Dietary Guidelines' recommendations for nutrition.  In its daily operations, CSPI accomplishes these objectives by educating its members, the public, and other nutrition and public health-focused organizations about the Guidelines, as well as by advising school food companies and partners that work with schools and food service professionals about how to tailor school meals to the Guidelines.  Under the nutrition standards issued by USDA in 2012, much of CSPI's work to bring school meals into compliance with the Guidelines was done in collaboration with the agency.  CSPI also pursued compliance with the Guidelines through its coordinating role in the National Alliance for Nutrition and Activity ("NANA"), a coalition of more than 500 national, state, and local organizations co-founded by CSPI in 1999, in part to educate school districts about nutrition and ways to make improvements to school food.

5.      With the passage of the Healthy, Hunger-Free Kids Act of 2010, and as described in more detail below, USDA promulgated new nutrition standards based on the Guidelines (including the sodium reduction and whole grains targets at issue in this litigation), and undertook numerous technical assistance initiatives, pursuant to Congressional directives (*e.g.*, 42 U.S.C. § 1758(a)(1)(B)), to bring schools into compliance with these new standards.  These

initiatives ranged from a comprehensive USDA guide on incorporating whole grain-rich products into school menus to initiatives such as *What's Shaking: Creative Ways to Boost Flavor with Less Sodium* and *Team Up for School Nutrition Success*.

6.      In support of its objective to align school meals with the Dietary Guidelines, CSPI actively partnered with USDA to carry out technical assistance initiatives.  Through this partnership, CSPI's operations and activities became fundamentally tied to and dependent upon USDA's technical assistance programs in at least two ways.  First, CSPI's partnership with USDA on numerous initiatives gave CSPI access to fora (*e.g*., conferences, workshops, and webinars) that convened a broad array of child nutrition stakeholders to help schools meet the Guidelines' whole grains and sodium requirements.  For example, CSPI played a lead role in working with USDA to organize a major, national back-to-school education and awareness campaign to prepare students, parents, and schools to implement the new standards in a coordinated, multimedia effort involving top USDA officials.  CSPI was also one of more than 40 organizations that partnered with USDA on its *What's Shaking* initiative, which assisted schools in meeting sodium reduction targets through a variety of resources, including widely-attended, agency-organized tweet chats that addressed the science of sodium reduction and described ways for schools to reduce sodium in meals.  Finally, CSPI partnered with USDA on the *Team Up for School Nutrition Success* initiative.  *Team Up* provided tailored technical assistance to foodservice operators and school nutrition programs by convening workshops in all seven Food and Nutrition Service regions and sponsoring *Team Up Thursday* webinars, to which thousands of people tuned in.  The unique nature, reach, and scope of these USDA-sponsored events and initiatives significantly enhanced CSPI's ability to achieve its mission to bring schools into compliance with the Guidelines and to improve school nutrition.

7.     Second, CSPI regularly relied on materials generated by USDA as part of these technical assistance initiatives in its other work to optimize compliance with the Guidelines. CSPI, for example, disseminated various USDA materials to NANA Coalition members that, in turn, used these materials, particularly in their efforts to help bring schools into compliance with the sodium targets.

8.     Plaintiff Chesapeake Institute for Local Sustainable Food & Agriculture ("CILSFA"), d/b/a Healthy School Food Maryland ("HSFM"), is a nonprofit, nonpartisan organization incorporated in 2012 and headquartered in Rockville, Maryland.  CILSFA's address is 3502 Softwood Terrace, Olney, MD 20832-2200, in Montgomery County.  CILSFA's mission is to promote research and education in sustainability of the earth for future generations.  In furtherance of that mission, one of CILSFA's primary functions is to advocate for, sponsor, and support local programs that advance knowledge and foster the application of scientific and social disciplines that affect the public's health, the environment, and natural resources.  To that end, CILSFA established HSFM[1] in 2012 as one of two projects through which CILSFA advocates for wholesome, nourishing food in the Montgomery County school system and in schools across the state of Maryland.  HSFM, which has approximately 5,600 parent members, accomplishes this objective in its daily operations by collaborating with school communities to elevate the quality and character of school food, developing and delivering programs that advance literacy in nutrition and health, and providing resources and information to students, parents, schools, and the public to assist them in building a culture of health that spreads to their homes and schools.

9.     As part of its commitment to improving school meal nutrition, HSFM conducts numerous activities to educate and train its parent members, schools, and the public, including

---

[1] HSFM has formerly been known as Real Food for Kids—Montgomery.

hosting various types of community gatherings and workshops that range from panel discussions to nutrition classes.  Much of HSFM's work in this regard involves promoting the incorporation of the Dietary Guidelines into school meals.  For example, HSFM has organized classes aimed at teaching culinary skills to prepare meals that are both tasty and satisfy the Guidelines' nutrition recommendations.  To educate its parent members about the Guidelines, HSFM also provides summaries on its website of USDA's school lunch and breakfast standards, including the targets for sodium and whole grains that, until recently, were based on the Guidelines.  Finally, HSFM worked to improve the practical, nutritional impact of the Dietary Guidelines by submitting comments on the expert report that formed the basis for the most recent edition of the Guidelines.

10.     In addition to these activities, and for the past two years, HSFM issued School Food Environment Grades for the 24 public school districts in Maryland based on a twelve-part rubric designed to assess how well the districts are responding to parent and public health concerns related to school food nutrition.  The School Food Environment Grades play an important transparency function in revealing how school districts are performing relative to their peers.  By increasing transparency, the Grades serve to educate schools about new and innovative school nutrition strategies while driving them to improve in areas where they are lagging.  The School Food Environment Grades have historically complemented HSFM's work on the Dietary Guidelines described above and exist against the backdrop of USDA's school meal standards.  Accordingly, the Grades largely focused on nutrition concerns that are not already addressed by USDA's school meal standards, such as reliance on locally sourced produce and access to salad bars.  Given that the Guidelines' established recommendations for salt and whole grains were previously incorporated into USDA regulations, HSFM did not

8

separately grade schools on sodium and whole grains compliance, but instead relied on the existing regulatory regime to ensure that school meals were consistent with the Guidelines.

11.     Defendant USDA is a federal agency headquartered in Washington, D.C., at 1400 Independence Avenue, S.W., Washington, D.C. 20250.

12.     Defendant Food and Nutrition Service ("FNS") is a component of USDA headquartered in Alexandria, Virginia, at 3101 Park Center Drive, Alexandria, VA 22302.

13.     Defendant Sonny Perdue is sued in his official capacity as U.S. Secretary of Agriculture.  His official address is 1400 Independence Avenue, S.W., Washington, D.C. 20250.

14.     Defendant Brandon Lipps is sued in his official capacity as Administrator of FNS and Acting Deputy Under Secretary for Food, Nutrition and Consumer Services.  His official address is 3101 Park Center Drive, Alexandria, VA 22302.

## FACTUAL ALLEGATIONS

### I.     The National School Lunch and Breakfast Programs

15.     In 1946, Congress enacted the Richard B. Russell National School Lunch Act (the "School Lunch Act"), Pub. L. No. 79-396, 60 Stat. 230 (1946) (codified as amended at 42 U.S.C. §§ 1751 *et seq.*), which created the National School Lunch Program in response to the fact that millions of young American men were found unfit to serve in World War II due to malnutrition, poor diet, and vitamin deficiencies.  In providing large-scale free and subsidized lunches, Congress sought "to safeguard the health and well-being of the Nation's children."  42 U.S.C. § 1751; *see also* 42 U.S.C. §§ 1758(a)(1), 1773(e)(1) (requiring meals to meet minimum requirements based on nutritional research).

16.     The School Lunch Act has since been amended repeatedly to expand the number of school food programs and add nutritional requirements to improve children's diets, nutrition, and overall health.  Today, and as relevant here, the School Breakfast and Lunch Programs serve,

respectively, some 14.7 and 29.8 million students each day.[2] Of these, approximately 12.5 million students (85 percent) and 22 million students (74 percent), respectively, receive school breakfast and lunch at a free or reduced cost.[3]

17. Over the decades, Congress shifted the focus of the Programs from primarily combatting underconsumption to ensuring that American children receive proper nutrition both to foster growth and development and to avoid the many chronic health consequences (including heart disease, hypertension, stroke, obesity, type 2 diabetes, cancer, and osteoporosis) that scientific research links to poor childhood nutrition. The result is a carefully reticulated statutory scheme requiring that school meal standards promulgated by USDA be based on nutrition science.

18. To this end, Congress amended the School Lunch Act in 1994 to require that USDA's school meal nutrition standards be brought "into conformance with the guidelines contained in the most recent 'Dietary Guidelines for Americans.'" Pub. L. No. 103-448, sec. 112, § 1760(k)(1), 108 Stat. 4699 (1994); *see also* S. Rep. No. 103-300, at 22 (1994) (instructing the Secretary "to implement the dietary guidelines"). The Dietary Guidelines for Americans provide "nutritional and dietary information and guidelines for the general public," 7 U.S.C. § 5341(a)(1), that "shall be based on the preponderance of the scientific and medical knowledge which is current at the time the report is prepared," *id.* § 5341(a)(2). Before updating the Guidelines on a five-year basis, the agencies convene a federal advisory committee of nutrition, public health, and medical experts to review scientific literature and relevant scientific reports,

---

[2] USDA, *Child Nutrition Tables*, https://www.fns.usda.gov/pd/child-nutrition-tables (*see* School Breakfast - Participation and Meals Served.pdf; National School Lunch- Participation and Meals Served.pdf).
[3] *Id.*

including the Dietary Reference Intakes ("DRIs"),[4] to prepare a report that "synthesizes current

scientific and medical evidence in nutrition … [and] outlines science-based recommendations."[5]

The agencies then develop the Guidelines "based on the totality of the evidence," using peer

review to ensure that there is an "accura[te] ... translation of the evidence from the Advisory

Report into policy language."[6]  As USDA has explained, the Guidelines are "the cornerstone for

Federal nutrition programs"[7] and "reflect the current science-based consensus on proper

nutrition."[8]

19.     In 2004, Congress took additional steps to ensure that school meals aligned with

the Guidelines by amending the School Lunch Act to add a provision requiring the Secretary of

Agriculture, within two years, to promulgate rules "based on the most recent Dietary Guidelines

for Americans, that reflect specific recommendations, expressed in serving recommendations, for

increased consumption of foods and food ingredients offered in school nutrition programs."  Pub.

L. No. 108-265, sec. 103, § 1758(a)(4)(B), 118 Stat. 729 (2004).

---

[4] DRIs are a set of reference values issued by the Food and Nutrition Board of the Institute of Medicine of the National Academies of Sciences, Engineering, and Medicine, used to plan and assess nutrient intakes of healthy people.  *See* Nat'l Acads. of Sci., Eng'g, & Med., *Dietary Reference Intakes Tables and Application*,
http://nationalacademies.org/hmd/Activities/Nutrition/SummaryDRIs/DRI-Tables.aspx.
[5] U.S. Dep't of Health & Human Servs., *Dietary Guidelines: Process*,
https://health.gov/dietaryguidelines/process.asp.
[6] USDA & U.S. Dep't of Health & Human Servs., *Dietary Guidelines for Americans: 2015-2020*
8-9 (8th ed. 2015), https://health.gov/dietaryguidelines/2015/resources/2015-
2020_Dietary_Guidelines.pdf.
[7] USDA, *About the Dietary Guidelines*, https://www.cnpp.usda.gov/about-dietary-guidelines.
[8] Standards in the National School Lunch and School Breakfast Program, 76 Fed. Reg. 2494,
2495 (Jan. 13, 2011); *see also* U.S. Dep't of Health & Human Servs., *Dietary Guidelines:
Purpose*, https://health.gov/dietaryguidelines/purpose.asp (explaining that the Dietary Guidelines
"reflect[] the body of nutrition science;" provide recommendations which aim to "promote
health, prevent chronic disease, and help people reach and maintain a healthy weight;" and have
"a significant impact" because, among other things, they "form[] the basis of federal nutrition
policy and programs").

20.     Finally, with the Healthy, Hunger-Free Kids Act of 2010, in recognition of the increasing evidence connecting poor dietary habits with various adverse health outcomes, Congress mandated additional improvements to the nutritional quality of school meals.  The 2010 Act further underscored Congress's intent that USDA's nutrition standards be grounded in the most recent Guidelines, and acknowledged the need for further progress to align school meals with the Guidelines.  The statute was enacted with bipartisan majorities in both Houses of Congress, and received external support from a range of stakeholders, including public and child health organizations, school food service professionals, researchers, food manufacturers, and "Mission: Readiness," an organization led by retired military generals focused on ensuring that the U.S. armed forces can recruit sufficient numbers of healthy individuals to achieve and maintain operational strength.  Among other things, the Act mandated that the Secretary of Agriculture, within three years, "update the meal patterns and nutrition standards for the school lunch program … and the school breakfast program … based on recommendations made by the [IOM Report]."  Pub. L. No. 111-296, sec. 201, § 1753(b)(3)(A)(i), 124 Stat. 3183 (2010); *see also* S. Rep. No. 111-178, at 4 (2010) (in explaining need for legislation, noting that "[a]ccording to USDA, roughly 99 percent of lunches included amounts of sodium above the recommended levels" and that children's diets were "low in ... whole grains").  USDA commissioned the IOM Report, released in 2009, in response to the Congressional mandate to promulgate rules "based on the most recent Dietary Guidelines."  The IOM Report was designed to assist the Department in aligning the school meal standards with the updated Guidelines.[9]

---

[9] Inst. of Med. of the Nat'l Acads., *School Meals: Building Blocks for Healthy Children* 19 (Virginia A. Stallings et al. eds., 2010), https://www.nap.edu/read/12751/chapter/1 [hereinafter IOM Report] ("The committee's overall task was to review and assess the food and nutritional needs of schoolchildren in the United States on the basis of the 2005 *Dietary Guidelines for*

21.     Recognizing the potential for operational challenges, Congress provided for a range of federally-funded technical assistance programs to help states, food service professionals, and schools comply with evolving school meal standards.  *See, e.g.*, Pub. L. No. 103-448, sec. 105, § 1758(a)(2)(B), 108 Stat. 4699 (1994) ("The Secretary shall provide technical assistance and training … to schools participating in the school lunch program to assist the schools in complying with the nutritional requirements prescribed by the Secretary.").[10] Providing this technical assistance is an "important feature" of the Programs, necessary to "insur[e] that the new nutritional content requirements are implemented effectively."[11]  H.R. Rep. No. 103-535, pt. 1 (1994).

## II.     The School Nutrition Rule

22.     Since 1995, and consistent with the statutory directives outlined above, USDA has, as required by law, based its nutrition standards for the School Lunch and Breakfast Programs on the Dietary Guidelines.[12]

---

*Americans* (HHS/USDA, 2005) and the Dietary Reference Intakes (DRIs)."); *see also* S. Rep. No. 111-178, at 8-9 (2010) ("In establishing nutrition standards, the Secretary is directed to adopt measures that are consistent with the Dietary Guidelines for Americans . . . .").

[10] *See also* Pub. L. No. 111-296, sec. 201, § 1753(b)(3)(F)(i), 124 Stat. 3183 (2010) ("[T]he Secretary shall make funds available to States for State activities related to training [and] technical assistance."); *id.* sec. 209, § 1758(k)(1)(B) (providing for "training and technical assistance to States and local educational agencies on the assessment and reporting of the school nutrition environment"); *id.* sec. 244, § 3179(a) ("The Secretary, in consultation with the Secretary of Health and Human Services, shall establish a research, demonstration, and technical assistance program to promote healthy eating and reduce the prevalence of obesity among all population groups but especially among children.").

[11] The IOM Report, too, observed that it would be "essential that USDA collaborate with school food service directors," recommending that USDA provide "[t]echnical assistance for developing and continuously improving menus, ordering appropriate foods (including the writing of specifications), and controlling costs while maintaining quality."  IOM Report at 12.

[12] *See* National School Lunch Program & School Breakfast Program: Additional Menu Planning Approaches, 65 Fed. Reg. 26,904, 26,904 (May 9, 2000) (stating that since 1995, school lunches and breakfast "must meet the Dietary Guidelines"); National School Lunch Program & School Breakfast Program: School Meals Initiative for Healthy Children, 60 Fed. Reg. 31,188, 31,188

23.     In 2011, USDA published a Notice of Proposed Rulemaking ("NPRM") to update

the school meal nutritional standards "to align them with the 2005 Dietary Guidelines for

Americans."[13] The 2005 Guidelines, for the first time, specified maximum consumption levels

for sodium and serving recommendations for whole grains.  Based on these Guidelines, and the

IOM Report, the Department proposed significant revisions to the school meal standards.

24.     *Sodium:* The Guidelines have long warned against a diet that is too high in

sodium, urging a reduction in salt intake due to the demonstrated relationship between high

sodium diets and adverse health conditions, like high blood pressure, stroke, heart disease, heart

failure, and kidney disease.[14]  In 2005, the Guidelines set a specified maximum consumption

---

(June 13, 1995) (adopting a provision "to incorporate the Dietary Guidelines for Americans into
program regulations," noting that the "foundation of this final rule is the requirement that, by
School Year 1996/1997, school lunches and breakfasts comply with the recommendations of the
Dietary Guidelines for Americans"); *id.* at 31,192 (observing that the law "mandate[s]
compliance with the Dietary Guidelines"); *id.* at 31,193 (reaching same conclusion, and detailing
applicable statutory "requirement[s]").

[13] Nutrition Standards in the National School Lunch and School Breakfast Program, 76 Fed. Reg.
2494, 2494 (Jan. 13, 2011); *see also id.* at 2495 ("[S]ection 9(a)(4) of the [National School
Lunch Act] was amended in 2004 requiring that meals be consistent with the most recent Dietary
Guidelines, so modifications are needed to align school meal patterns with the Dietary
Guidelines.").

[14] *See, e.g.*, USDA & U.S. Dep't of Health & Human Servs., *Nutrition and Your Health: Dietary
Guidelines for Americans* 17-18 (1st ed. 1980),
https://health.gov/dietaryguidelines/1980thin.pdf?_ga=2.256316491.1374890595.1550846427-
813101678.1550846427 [hereinafter 1980 Guidelines]; USDA & U.S. Dep't of Health and
Human Servs., *Nutrition and Your Health: Dietary Guidelines for Americans* 21-22 (2nd ed.
1985),
https://health.gov/dietaryguidelines/1985thin.pdf?_ga=2.200777454.1374890595.1550846427-
813101678.1550846427 [hereinafter 1985 Guidelines]; USDA & U.S. Dep't of Health and
Human Servs., *Nutrition and Your Health: Dietary Guidelines for Americans* 23-24 (3rd ed.
1990),
https://health.gov/dietaryguidelines/1990thin.pdf?_ga=2.89468827.1402488056.1550846286-
1577757815.1550846286 [hereinafter 1990 Guidelines]; USDA & U.S. Dep't of Health and
Human Servs., *Nutrition and Your Health: Dietary Guidelines for Americans*, (4th ed. 1995) (*see
Choose a Diet Moderate in Salt and Sodium*), https://health.gov/dietaryguidelines/dga95/
[hereinafter 1995 Guidelines]; USDA & U.S. Dep't of Health and Human Servs., *Nutrition and*

level of 2,300 mg of sodium per day—the highest daily intake level that was considered likely to pose no risk of adverse health effects.[15]

25.     USDA thus proposed in 2011 that schools participating in the Programs be required to reduce sodium content in school meals gradually, hitting three targets over the course of a decade, with the third target culminating in meals that achieve the Guidelines-recommended daily consumption limit.[16] The Department explained that "reducing dietary salt in adolescents could yield substantial health benefits by decreasing the number of teenagers with hypertension and the rates of cardiovascular disease and death as these teenagers reach young and middle age adulthood."[17]

26.     *Whole grains*: Since 1980, the Guidelines consistently emphasized the need to eat more whole grains due to the demonstrated health benefits provided by the vitamins, minerals, fiber, and other protective nutrients found in whole grains.[18] As with sodium, the 2005 Dietary

---

*Your Health: Dietary Guidelines for Americans* (5th ed. 2000) (*see Choose and Prepare Foods With Less Salt*), https://health.gov/dietaryguidelines/dga2000/document/frontcover.htm [hereinafter 2000 Guidelines].

[15] USDA & U.S. Dep't of Health and Human Servs., *Dietary Guidelines for Americans* 40 (6th ed. 2005), https://health.gov/dietaryguidelines/dga2005/document/pdf/DGA2005.pdf?_ga=2.12473588.151 8578809.1553541287-813101678.1550846427 [hereinafter 2005 Guidelines]. The IOM Report recommended USDA set "specifications for sodium that are to be attained by the year 2020, with suggestions for intermediate targets." IOM Report at 121.

[16] Specifically, USDA proposed the following sodium-reduction schedule, based on age group: (1) two years post-implementation, school breakfasts could include no more than 540-640 mg of sodium, and school lunches could include no more than 1,230-1,420 mg of sodium ("Target 1"); (2) four years post-implementation, school breakfasts could include no more than 485-570 mg of sodium, and school lunches could include no more than 935-1,080 mg of sodium ("Target 2"); and (3) ten years post-implementation, school breakfasts could include no more than 430-500 mg of sodium, and school lunches could include no more than 640-740 mg of sodium ("Target 3"). 76 Fed. Reg. at 2502.

[17] 76 Fed. Reg. at 2502.

[18] 1980 Guidelines at 5, 13-14; 1985 Guidelines at 7, 17; 1990 Guidelines at 11, 18; 2000 Guidelines at 10; *see also* Dietary Guidelines Advisory Comm., *Report of the Dietary Guidelines*

Guidelines included specific serving information for whole grains, directing that at least half of all grains consumed should be whole grains.[19]  The recommendation was based on the fiber content and nutrient density of whole grains and research linking increased whole grain consumption to a reduction in the risk of diabetes, coronary heart disease, and improvements in laxation.[20]

27.    USDA thus proposed in 2011 that "half of the grains offered during the school week must be whole grain-rich" and that "[t]wo-years post implementation of the final rule, all grains offered during the week must be whole grain-rich."[21]

28.    In 2012, USDA issued a final rule, Nutrition Standards in the National School Lunch and School Breakfast Programs, 77 Fed. Reg. 4088 (Jan. 26, 2012) (the "School Nutrition

---

*Advisory Committee on the Dietary Guidelines for Americans, 2000* 29-30 (Feb. 2, 2000), https://health.gov/dietaryguidelines/dgac/pdf/dgac_ful.pdf ("Substitution of whole for refined grains may be associated with reductions in a spectrum of chronic disease risks…. Recent large prospective association studies have provided evidence for substantial reductions in heart disease risk associated with dietary patterns characterized by high intake of whole grain intake in both men and women in the United States and abroad…. Intake of whole grains … may reduce risk of hypertension…. Several case-control studies have suggested lower risk with high (vs. low) whole grain intake for colorectal, gastric, and endometrial cancers—and likely other cancers as well." (citations omitted)).

[19] 2005 Guidelines at 24, 36; Dietary Guidelines Advisory Comm., *Report of the Dietary Guidelines Advisory Committee on the Dietary Guidelines for Americans, 2005* (Aug. 19, 2004), https://health.gov/dietaryguidelines/dga2005/report/HTML/D5_Carbs.htm?_ga=2.48657702.161 8938514.1550780538-395479033.1547588568 [hereinafter 2005 Report].

[20] 2005 Report.  The IOM Report recommended that USDA initially require half of all grains served in school meals be whole grain-rich and that approximately three years post-implementation, the Department "revise the standards for menu planning with regard to grains such that the proportion of whole grain … to refined grain will exceed 50 percent." IOM Report at 124, 199.

[21] 76 Fed. Reg. at 2500.  Whole grain-rich foods "contain 100 percent whole grain or a blend of whole-grain meal and/or flour and enriched meal and/or flour of which 50 percent is whole grain." USDA, *Whole Grain Resource for the National School Lunch and School Breakfast Programs: A Guide to Meeting the Whole Grain-Rich Criteria*, https://fns-prod.azureedge.net/sites/default/files/WholeGrainResource.pdf.

Rule"). The Department explained that its intent was to "provide nutrient-dense meals (high in nutrients and low in calories) that better meet the dietary needs of school children and protect their health" because "all sectors of our society, including schools, [must] help children make significant changes in their diet to improve their overall health and become productive adults."[22] The Department also found that the final rule was "projected to make substantial improvements in meals served to more than half of all school-aged children on an average school day" and was "a cost-effective means of conforming [the Programs'] regulations to the statutory requirements for school meals."[23] With regard to those statutory requirements, USDA explained that the School Nutrition Rule was necessary "to align" the "meal patterns and nutrition standards" in the Programs with the Dietary Guidelines[24] and that the Rule's provisions were "largely based on" recommendations made in the IOM Report.[25] Consistent with Congress's directive that school meal standards be based on the most up-to-date Guidelines, the School Nutrition Rule took into account both the 2005 Guidelines, on which the 2011 proposed rule had been based, and the 2010 Guidelines (discussed below), which were released after the proposed rule but prior to issuance of the final School Nutrition Rule.[26]

---

[22] 77 Fed. Reg. at 4088, 4089.

[23] *Id.* at 4107; *see also* 83 Fed. Reg. at 63,784 n.4.

[24] 77 Fed. Reg. at 4088.

[25] *Id.*

[26] *Id.* Prior to issuing the 2012 School Nutrition Rule, USDA had published an additional NPRM, Incorporating the 2010 Dietary Guidelines for Americans Into the Proposed School Meal Patterns, 76 Fed. Reg. 15,225 (Mar. 21, 2011), to address the 2010 Dietary Guidelines, explaining that although in 2011 it had sought "to align the school meal patterns and nutrition standards with the 2005 DGAs, the most current at the time of publication," the newly released 2010 Dietary Guidelines contain "changes from the 2005 recommendations which could affect the proposed school meal patterns." That NPRM did not make any changes to the proposed rules regarding sodium and whole grains. *See generally* 76 Fed. Reg. 15,225.

29.     The Department finalized the School Nutrition Rule with minimal revisions to the proposed sodium and whole grain requirements for school meals.[27]

30.     For **sodium**, USDA emphasized that "the average sodium content of school lunches (for all schools) remains high [at] [m]ore than 1400 mg" and that "[r]educing the sodium content of school meals is a key objective of this final rule reflecting the Dietary Guidelines recommendation for children and adults to limit sodium intake to lower the risk of chronic diseases."[28]  The 2010 Guidelines adopted a recommendation similar to that provided in the 2005 Guidelines, but also demarcated the Tolerable Upper Intake Level by age.  For children ages 1-3, the Guidelines recommended consuming less than 1,500 mg of sodium per day; for children ages 4-8, less than 1,900 mg per day; for children ages 9-13, less than 2,200 mg per day; and for children ages 14-18, less than 2,300 mg per day.[29]  USDA's final rule adopted the same target levels as had been in the proposed rule[30] and set the following schedule for compliance dates to reduce sodium in meals:

a.  Target 1: July 1, 2014 (SY 2014/2015);

b.  Target 2: July 1, 2017 (SY 2017/2018); and

c.  Target 3: July 1, 2022 (SY 2022/2023).[31]

31.     USDA specifically noted that "[m]eeting the *final sodium targets* will enable schools to offer meals that reflect the 2010 Dietary Guidelines' recommendation to limit sodium

---

[27] 77 Fed. Reg. at 4088.

[28] *Id.* at 4097.

[29] USDA & U.S. Dep't of Health & Human Servs., *Dietary Guidelines for Americans* 76 (7th ed. 2010), https://health.gov/dietaryguidelines/dga2010/DietaryGuidelines2010.pdf [hereinafter 2010 Guidelines].  The 2015 Guidelines advise these same Tolerable Upper Intake Levels.

[30] *See supra* note 16.

[31] 77 Fed. Reg. at 4098.

intake to less than 2,300 mg per day."[32]  The target schedule was imposed, in part, to "give[]

industry more time to develop products that meet the rule's standards."[33]

32.      For **whole grains**, USDA explained that whole grains are a "source of nutrients

such as iron, magnesium, selenium, B vitamins, and dietary fiber" and cited to evidence that

"eating whole grains in nutrient dense forms may lower body weight and reduce the risk of

cardiovascular disease."[34]  The 2010 and 2005 Guidelines both recommended that half of all

grains consumed be whole grains,[35] and the final rule's requirements therefore were intended to

"help children increase their intake of whole grains and benefit from the important nutrients they

provide."[36]  USDA set the following schedule for increasing whole grain content in school

meals:

    a.   for school lunches, immediately upon implementation of the rule (SY 2012-2013), whole grain-rich products must make up at least 50 percent of the grains served;

    b.   for school breakfasts, beginning July 1, 2013 (SY 2013/2014), whole grain-rich products must make up at least 50 percent of the grains served; and

    c.   for both school lunch and breakfasts, schools must offer only whole grain-rich products by July 1, 2014 (SY 2014/2015) (the "100 percent whole grain-rich requirement").[37]

33.      USDA defined a whole grain-rich product to include "at least 51 percent whole

grains and the remaining grain content of the product must be enriched."[38]

---

[32] *Id.*

[33] *Id.* at 4127.

[34] *Id.* at 4093.

[35] The 2015 Guidelines adopt the same recommendation.

[36] 77 Fed. Reg. at 4093.

[37] *Id.* at 4093, 4123.

[38] *Id.* at 4093.  As described *infra* at ¶ 40, a process was later introduced to allow select school-by-school, product-by-product waivers to the whole grain requirements.

34.     To help states and school districts implement the updated standards, and consistent with Congress's directives concerning technical assistance, USDA committed to developing a variety of forms of such assistance for participating schools.  The pledged assistance included facilitating the monitoring of school meals;[39] "help[ing] school foodservice staff improve menus, order appropriate foods to meet the new meal requirements, and control costs while maintaining quality;"[40] assisting state agencies in training school food professionals through agency-led initiatives like "Team Nutrition;"[41] and developing "[r]esources and training materials" on "identifying and purchasing whole grain-rich foods, lowering the sodium on menus, and meeting the new meal pattern requirements."[42]  Specifically with respect to sodium reduction, USDA underscored its "commit[ment] to helping program operators reduce sodium in school menus," explaining that "USDA's Team Nutrition and the National School Food Service Management Institute have developed guidance for reducing sodium"[43] and that "USDA also continues to make low-sodium USDA Foods available to schools."[44]

35.     The School Nutrition Rule became effective on March 26, 2012, and the compliance date, except as otherwise noted in the rule, was July 1, 2012.[45]

36.     Following implementation, the School Nutrition Rule was a significant success. Students largely accepted the healthier food offerings:  studies showed that, since the School Nutrition Rule's implementation, children were eating 16-20 percent more vegetables, 12-23

---

[39] *Id.* at 4099.
[40] *Id.* at 4104.
[41] *Id.* at 4125, 4132.
[42] *Id.* at 4104.
[43] *Id.* at 4098.
[44] *Id.*
[45] *Id.* at 4088.

percent more fruits, and consuming 13 percent more of their lunch entrees—all while throwing away less food.[46]

37.    Schools and industry also began adapting to the School Nutrition Rule's updated requirements.  By 2017, approximately 85 percent of schools had met the School Nutrition Rule's whole grain-rich requirement without requesting a single product waiver;[47] in some states, such as Alabama, Arizona, Idaho, Massachusetts, Montana, Nevada, New Hampshire, and Vermont, 100 percent of schools had done so.[48]  With respect to sodium, virtually all schools (99.8 percent) had met the Target 1 levels.[49]  Although USDA has not collected data on schools' compliance with the second sodium target, some schools had already met or were close to meeting the Target 2 sodium levels as of 2017.[50]  Schools were employing a variety of compliance techniques, including training staff to analyze nutritional content, educating students on nutrition and menu changes, conducting student surveys and taste tests, offering spice bars and salad bars to provide students more flavor options with less sodium, working with companies to find products that meet schools' nutrition needs, and sharing information with

---

[46] CSPI, Comment Letter on Interim Final Rule on Child Nutrition Programs: Flexibilities for Milk, Whole Grains, and Sodium Requirements 10-11 (Jan. 29, 2018), *available at* https://www.regulations.gov/document?D=FNS-2017-0021-7286 [hereinafter CSPI Comment Letter] (citing JF Cohen et al., *Impact of the New U.S. Department of Agriculture School Meal Standards on Food Selection, Consumption, and Waste*, 46 Am. J. Prev. Med. 388, 388-94 (2014); MB Schwartz et al., *New School Meal Regulations Increase Fruit Consumption and Do Not Increase Total Plate Waste*, 11 Child Obesity 242, 242-47 (2015)).
[47] As described *infra* at ¶ 40, a process was introduced to allow select school-by-school, product-by-product waivers to the whole grain requirements.
[48] *Id.* at 8 (citing USDA, *Tools for Schools: Serving Whole Grain-Rich*, https://www.fns.usda.gov/healthierschoolday/tools-schools-serving-whole-grain-rich).
[49] 83 Fed. Reg. at 63,785.
[50] CSPI Comment Letter at 6.

other schools that were also working to develop and adopt best practices to comply with the

School Nutrition Rule.[51]

38.     The supply of products available to schools that comply with the School Nutrition

Rule also began to increase.  Some food manufacturers, for instance, made investments to reduce

sodium across their lines of consumer products, including producers of products popular with

children, such as Kraft Foods, Mars, Nestlé, General Mills, Kellogg, Revolution Foods, and

Domino's Pizza.[52]

39.     Consistent with its statutory obligations, USDA provided technical assistance to

schools that faced difficulty in complying with the School Nutrition Rule, including providing

information and conducting trainings on issues such as menu planning, recipe and food

preparation, and procurement practices.[53]  In partnership with organizations such as CSPI (*see

supra* ¶ 6), USDA also conducted programs like *Team Up for School Nutrition Success* and

*What's Shaking*, which provided training and established a national collaborative to share

information on best practices for reducing sodium content.[54]

40.     Despite the notable success, Congress enacted a series of appropriations riders

targeting particular aspects of the School Nutrition Rule.  As relevant here, the final rider enacted

in 2017 (1) retained sodium Target 1 through SY 2017-2018 and (2) directed the Secretary of

Agriculture to allow states to grant waivers from the 100 percent whole grain-rich requirement

---

[51] *Id.* at 7 (citing Brooke Hardison, *Training the Teachers in Our Biggest Classrooms*, USDA (Mar. 8, 2016),
https://www.usda.gov/media/blog/2016/03/8/training-teachers-our-biggest-classrooms); *id.* at 8.
[52] *Id.* at 5-6.
[53] *See*, *e.g.*, USDA, *National School Lunch Program: Tools for Schools*,
https://www.fns.usda.gov/school-meals/tools-schools (containing a list of resources provided to schools as part of USDA's technical assistance).
[54] CSPI Comment Letter at 7.

on a school-by-school, product-by-product basis, provided such schools were meeting the originally-required 50 percent whole grain-rich requirement.[55]  The 2017 rider, by its terms, was set to expire after SY 2017-2018, at which point school districts would be required to comply with Target 2 for sodium reduction and the 100 percent whole grain-rich requirement, without the whole-grain waiver process created by Congress in the rider.

### III.    Efforts to Roll Back the School Nutrition Rule

41.    On May 1, 2017, within his first week in office, Secretary of Agriculture Sonny Perdue signed a "proclamation" stating that it was now USDA's intent to "provide greater flexibility in nutrition requirements for school meal programs."[56]  The statement explained the Secretary's desire to extend the "flexibilities" that had been available under the 2017 appropriations rider.  The Secretary explained that the whole grains exemption process would continue past its expiration through SY 2017-2018 and that "schools that meet sodium Target I for school years 2017–2020 will be considered compliant with USDA sodium requirements," stressing that, "[t]he Department will take all necessary regulatory actions to implement [the sodium] change."[57]

42.    The same day, USDA touted the "flexibilities" in a companion press release, *Ag Secretary Perdue Moves to Make School Meals Great Again*.[58]

---

[55] Pub. L. No. 115-31, § 747, 131 Stat. 135 (2017).

[56] Press Release, USDA, *Ag Secretary Perdue Moves to Make School Meals Great Again* (May 1, 2017), https://www.usda.gov/media/press-releases/2017/05/01/ag-secretary-perdue-moves-make-school-meals-great-again [hereinafter USDA Press Release].

[57] Proclamation by Sonny Perdue, Sec'y of Agric., USDA, on *USDA Commitment to School Meals* (May 1, 2017), https://www.usda.gov/sites/default/files/documents/secretary-perdue-child-nutrition-proclamation.pdf.

[58] USDA Press Release.

43.     On May 22, 2017, USDA released policy guidance to Regional and State Directors, SP 32-2017, May 22, 2017, *School Meal Flexibilities for School Year 2017-2018*, advising schools that the "flexibilities" created by the 2017 appropriations rider would be in effect for SY 2017-2018 (retaining Target 1 for sodium and allowing discrete, product-by-product exemptions for individual schools for particular whole grain products), and underscoring USDA's intention to so amend the sodium and whole grain regulations.[59]

**The Interim Final Rule**

44.     On November 30, 2017, USDA published an Interim Final Rule ("IFR"), *Child Nutrition Programs: Flexibilities for Milk, Whole Grains, and Sodium Requirements*, 82 Fed. Reg. 56,703 (Nov. 30, 2017), extending the "flexibilities" into SY 2018-19 and opening a 60-day public comment period.  The Department cited "menu planning and procurement challenges, local operational differences, and community preferences"[60] and a need for regulatory clarity given that the food procurement cycle "may take up to a year to complete, beginning in August of the previous school year."[61]

45.     For *sodium*, the IFR retained Sodium Target 1 for SY 2018-2019 (delaying compliance with Target 2) and requested comment on the "long-term availability of this flexibility and its impact on the sodium reduction timeline established in 2012 and, specifically, the impact on Sodium Target 2."  The IFR made no mention of Sodium Target 3, among other things.[62]

---

[59] Memorandum from Angela Kline, Dir., Child Nutrition Programs: Pol'y & Program Dev. Div., on *School Meal Flexibilities for School Year 2017-2018* (May 22, 2017), https://fns-prod.azureedge.net/sites/default/files/cn/SP32-2017os.pdf.
[60] 82 Fed. Reg. at 56,704.
[61] *Id.* at 56,705.
[62] *Id.* at 56,704.

46.     For *whole grains*, the IFR extended the rider's provision for the school-by-school and product-by-product waiver process into SY 2018-19, noting that it would "consider public comments in order to develop a final rule that address[es] the whole grain-rich exemptions."[63]

*The School Nutrition Rollback Rule*

47.     USDA recorded a total of 86,247 comments on the IFR.[64]  Less than one percent of the commenters supported either further delay of Target 2 or keeping the whole grain-rich exemption process in place, as outlined in the IFR.[65]  A vast majority of the commenters (96 percent for sodium, and 97 percent for whole grains) favored keeping the 2012 whole grains and sodium-reduction standards intact.[66]  Plaintiffs and a broad range of other commenters, from health and nutrition policy organizations to state education officials and food manufacturers, opposed the rollbacks.

48.     Nonetheless, on December 12, 2018, USDA published the final School Nutrition Rollback Rule, 83 Fed. Reg. 63,775, revising downward the sodium and whole grain standards to an extent that eviscerated the standards and went far beyond the changes on which the Department had sought comment.

49.     For *sodium*, the Rollback Rule retained Target 1, delayed the compliance date for Target 2 an additional five years until SY 2024-2025, and entirely eliminated Target 3, abandoning the three-target construct set forth in the School Nutrition Rule.[67]  For *whole grains*, the Department similarly upended the 2012 regulatory scheme, eliminating both the 100 percent

---

[63] *Id.* at 56,708.
[64] 83 Fed. Reg. at 63,777.
[65] *Id.* at 63,778.
[66] *Id.* at 63,777-78.
[67] *Id.* at 63,776.

whole grain-rich requirement and the temporary exemptions process, and instead changing the baseline to require that only 50 percent of the grains served weekly in the Programs be whole grain-rich.[68]

50.     In this manner, the School Nutrition Rule established nutrition standards for sodium and whole grains that are not based on—and in fact are inconsistent with— the Guidelines, the IOM Report, and nutrition science.

51.     USDA's actions, findings, and conclusions in the School Nutrition Rollback Rule are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law in numerous ways, including:

52.     USDA's gutting of the sodium and whole grains standards was contrary to applicable statutes, which require that the nutrition standards be based on and consistent with nutrition science, as set forth in the Dietary Guidelines and IOM Report.  For instance, the Rollback Rule eliminates sodium Target 3, which the agency previously conceded was the earliest point at which the nutrition standards would achieve the Dietary Guidelines' maximum recommended intake level for sodium.  The Rule also contravenes the Dietary Guidelines' recommendation that at least half of grains consumed should be whole grains; if a school serves the minimum amount of whole grain-rich products required under the Rollback Rule (50 percent), and its whole grain-rich products contain the minimum amount of whole grains (51 percent), only roughly a quarter of the grains served would be whole grains.  The Rollback Rule was also based on factors that lack any basis in the statute, such as perceived student taste preferences and providing schools operational "flexibility" to serve less nutritious foods. Because the Rollback Rule contravenes the statute, USDA is not currently in compliance with its

---

[68] *Id.*

26

mandatory duty to promulgate school nutrition regulations based on the Dietary Guidelines and the IOM Report.

53.     Even if the Rollback Rule did not contravene the unambiguous statutory text, it constitutes an unreasonable interpretation of those statutes and is arbitrary because USDA failed to provide a reasoned explanation for its changes to the sodium and whole grain standards.  The Department did not even acknowledge that it was abandoning its prior, longstanding interpretation of applicable statutes as requiring nutrition standards to be based on and consistent with the Dietary Guidelines.  USDA failed to furnish any reasoned justification for its radical change in statutory interpretation decoupling school meal nutrition standards from the Guidelines.

54.     Although the Department acknowledged that it was changing the content of the actual nutrition standards, it also failed to provide a reasoned explanation for doing so.  The Department's stated bases for weakening the standards included student taste preferences, "menu planning challenges experienced by some schools,"[69] and a desire "to give schools more control over food service decisions" and to offer meals "that reflect local preferences."[70]  But the Department made no effort to ground the revised standards in nutrition science, as required by Congress, thus departing from the factors Congress instructed the Department to consider.

55.     The Department also stated, without elaboration or explanation, that it did not "anticipate" that the weakened standards would "deter the significant progress made to date . . . to achieve healthy, palatable meals for students."[71]  Yet at the same time, the Department agreed

---

[69] *Id.*

[70] *Id.*

[71] *Id.* at 63,784-85.

with the many commenters who had pointed out that regulatory targets are "essential to incentivize the food industry's efforts to support the service of wholesome and appealing school meals."[72]  The Department made no effort to reconcile or explain these two inconsistent positions, leaving wholly unaddressed the concern that rolling back standards would likely halt industry's progress, given evidence in the record that higher regulatory standards created the incentive for industry to manufacture Guidelines-compliant products,[73] and the specific design of the three-tiered system, which contemplated that such a graduated target system was necessary to provide the incentives for product innovation and development on a large scale.

56.     The Department also stated in the final rule that it "expects the health benefits of the meal standards" to be "mainly left intact."[74]  Yet, it undertook no analysis and provided no explanation to support this bare assertion.  Nor did the Department even attempt to reconcile this view with its previous finding that establishment of the School Nutrition Rule's minimum standards would generate significant public health benefits, including the "substantial health benefits"[75] from sodium reduction, which it had declared a "key objective"[76] of the rulemaking. In this way, the Department failed to consider an important aspect of the problem before it.

57.     The Department also made no effort whatsoever to explain why such large-scale rollbacks were necessary to respond to discrete regulatory compliance issues with the sodium and whole grain standards—for example, specific issues with whole grains pertaining to "select

---

[72] *Id.* at 63,783.

[73] *See* Comment of Mars Inc., Nestle, & Unilever, Dkt. No. FNS-2017-0021 (Jan. 29, 2018) (opposing rollbacks, and asserting that retaining the standards from the School Nutrition Rule "will have a meaningful impact on student health and justify continued public and private efforts to further the development of lower-sodium and whole grain-rich products").

[74] 83 Fed. Reg. at 63,784.

[75] 77 Fed. Reg. at 4133.

[76] *Id.* at 4097.

products that are difficult to prepare, procure, or do not appeal to students"[77]—and left thoroughly unaddressed the reasonable alternative approaches suggested by many commenters. For instance, commenters emphasized the relatively small percentage of schools that had sought product-specific waivers from the whole grain-rich requirement.  Commenters recommended that any specific implementation challenges be addressed through the much more tailored approach of offering targeted additional training and technical assistance, as Congress had anticipated and provided.[78]

58.     The Department similarly failed to respond to other significant comments, including concerns that the proposed flexibilities that were contemplated in the IFR would disparately impact low-income students in poorer schools.  USDA's only response on this point was to direct readers to a Civil Rights Impact Analysis supposedly available for "public inspection" at regulations.gov.  That Analysis, however, was not made available at regulations.gov until late March 2019, four months after USDA had issued the Rollback Rule. Even then, the Analysis offers no adequate explanation.  The agency expressly conceded the existence of "racial disparities in health outcomes," but suggested that the final rule would "similarly impact all other racial/ethnic groups" and speculated without supporting data or rationales that harms might not occur because states or school food agencies might decide to "mov[e] faster towards Sodium Target 2" or to "offer exclusively whole grain-rich grains."[79] The Civil Rights Impact Analysis also falls short of what the Department's own regulations require.  For instance, Departmental Regulation 4300-004 requires the agency to "develop and

---

[77] 83 Fed. Reg. at 63,786.

[78] *Id.* at 63,782.

[79] FNS, *Civil Rights Impact Analysis* 5 (Oct. 15, 2018).

implement a mitigation strategy that will eliminate, alleviate, or lessen any adverse impact(s) as a result of a policy, action or decision."[80]  But despite acknowledging the existence of racial disparities in health outcomes, the Analysis asserted that "no disproportionate adverse impact on the protected classes is anticipated."[81]  To mitigate "unanticipated impact[s]," the Department stated only that it would provide technical assistance and training, and will otherwise "encourage" program operators to continue making progress toward Sodium Target 2 and "offering more whole grain-rich options"—*i.e.*, precisely the opposite of the changes adopted in the Rollback Rule.[82]

### *USDA Curtails Technical Assistance Tethered to the Dietary Guidelines*

59.     With the issuance of the School Nutrition Rollback Rule, USDA ceased providing technical assistance to align the whole grains and sodium standards with the Dietary Guidelines. Although USDA asserts in the Rollback Rule that it will continue to offer technical assistance, the agency has curtailed its prior, robust efforts to assist schools and nutrition professionals in implementing the sodium and whole grains standards in the School Nutrition Rule.  In at least one instance, the agency has gone as far as removing *any* reference to the Dietary Guidelines from one of its technical assistance webpages.  Similarly, a new technical assistance document issued in February 2019 emphasizes that the agency is "committed to providing . . . *flexibility* with respect to the . . . whole grain-rich and sodium requirements."[83]  In another publication,

---

[80] USDA, *Departmental Regulation 4300-004* 14, https://www.ocio.usda.gov/sites/default/files/docs/2012/CRIA%20DR%204300-004-final.pdf.
[81] FNS, *Civil Rights Impact Analysis* 13 (Oct. 15, 2018).
[82] *Id.* at 13-14.
[83] USDA, *Child Nutrition Programs: Flexibilities for Milk, Whole Grains, and Sodium Requirements*, https://fns-prod.azureedge.net/sites/default/files/cn/MealFlexSY18-19andSY19-20.pdf.

*Balancing Nutrition and Taste: USDA Flexibilities Improve School Meal Service*, issued in

March 2019, USDA featured a nutrition director from South Dakota, who "explained that

without USDA's flexibility on sodium standards, her school district would have had to sacrifice

meal taste, like serving salad without dressing or hamburgers without ketchup."[84]  The March

2019 publication also featured a school food industry executive, who explained that "the

flexibilities allow schools to serve more grain products, such as non-whole grain tortillas, pasta,

pizza and white rice."[85]  Consistent with this new messaging, USDA's *What's Shaking* initiative

on sodium reduction has become inactive and no longer hosts webinars or generates new

materials intended to help schools reach Targets 2 and 3.  In sum, rather than helping schools to

meet the previously adopted, Guidelines-compliant sodium and whole grains targets, USDA is

instead actively encouraging schools to backslide to less healthy meals under the new, weakened

standards.

## IV.    DRIs and 2020 Dietary Guidelines

60.    On March 5, 2019, the National Academy of Sciences issued the DRIs on sodium

that will form the basis of sodium recommendations for the forthcoming 2020 Dietary

Guidelines.[86]  The DRIs began with the observation that consumption of sodium by the "vast

---

[84] Wayne Maloney, *Balancing Nutrition and Taste: USDA Flexibilities Improve School Meal Service*, USDA (Mar. 8, 2019), https://www.usda.gov/media/blog/2019/03/08/balancing-nutrition-and-taste-usda-flexibilities-improve-school-meal-service.
[85] *Id.*
[86] Nat'l Acads. of Sci., Eng'g, & Med., Dietary Reference Intakes for Sodium and Potassium (Virginia A. Stallings et al. eds., 2019), http://www.nationalacademies.org/hmd/Reports/2019/dietary-reference-intakes-sodium-potassium.aspx [hereinafter Sodium DRIs]; *see also* USDA & U.S. Dep't of Health and Human Servs., *Process to Develop the 2020-2025 Dietary Guidelines for Americans* 4, https://www.cnpp.usda.gov/sites/default/files/dietary_guidelines_for_americans/RevisedTopicsAndQuestions-ListA.pdf (indicating it is "expected that [the Sodium DRIs] will be reflected" in the 2020 Dietary Guidelines).

majority of the U.S. ... population[]" is above recommended levels.[87]  The DRIs left the

recommended maximum daily intake of sodium at 2,300 mg a day but *lowered* the recommended

maximum intake for children aged 4-13 (from 1,900 to 1,500 mg for 4 to 8-year-olds, and from

2,200 to 1,800 for 9 to 13-year-olds).[88]  The DRIs classified those recommendations as Chronic

Disease Risk Reduction intakes, rather than Upper Tolerable Intake Levels (the term used in

prior DRIs), because the committee concluded there was sufficient evidence to establish the

causal relationship between reducing sodium intake below those levels and lowering

"cardiovascular disease risk, hypertension risk, systolic blood pressure, and diastolic blood

pressure . . . within the apparently healthy population."[89]  In sum, current levels of sodium in the

diet are well recognized to increase the susceptibility of children to chronic disease and should

be lowered to address disease risk.

61.    The DRIs further demonstrate the degree to which the weakened sodium

requirements in the Rollback Rule diverge from Congress's mandate and will delay progress to

protect child health.  At the current Target 1 levels that remain in effect until 2024, a single

elementary school lunch has more than 82 percent of the current DRIs' daily recommended

sodium.

## V.    Injuries to Plaintiffs

62.    In gutting the salt and whole grains standards so that they are no longer consistent

with the Dietary Guidelines, the Rollback Rule will have imminently harmful effects on

children's diets and overall health.  As a direct result of the weakened standards in the Rule,

---

[87] Sodium DRIs at 12.

[88] *Id.* at 11.

[89] Nat'l Acads. of Sci., Eng'g, & Med., *Consensus Study Report Highlights: Dietary Reference Intakes for Sodium and Potassium* 3 (Mar. 2019), https://www.nap.edu/resource/25353/030519DRISodiumPotassium.pdf.

children, including children of Plaintiffs' members, will consume food that is higher in sodium and contains fewer nutrient-dense whole grains. To be sure, USDA portrays the rollbacks on salt and whole grains as merely creating a floor that school districts may choose to rise above. But multiple school districts—from Montgomery County, Maryland to Olympia, Washington— already made clear that they intend to make use of the Rollback Rule's weakened standards and thus will depart from the Guidelines in their salt and whole grain offerings. Indeed, in the March 2019 publication discussed above, USDA itself trumpeted the example of a nutrition director from South Dakota who indicated that her district will now offer saltier foods than it would have under the prior rule.

63.     In multiple ways, the Rollback Rule directly conflicts with, impairs, and frustrates CSPI's mission and activities by impeding its ability and efforts to bring school meals into compliance with the Dietary Guidelines' recommendations on sodium and whole grains.

64.     As a direct result of the Rollback Rule, and the agency's corresponding retreat from technical assistance, CSPI can no longer partner with USDA to assist schools in meeting the Dietary Guidelines' recommendations on sodium and whole grains. In the absence of this technical assistance, CSPI has been deprived of USDA-generated materials on which it routinely relied in the past to assist schools with meeting the 100 percent whole grain-rich requirement and the graduated sodium reduction targets. In addition, and going forward, CSPI is also no longer able to rely on USDA initiatives to create fora that would be broadly attended by school-nutrition stakeholders for the express purpose of collaborating to help schools comply with the Dietary Guidelines. This makes CSPI's goal of aligning school meals to the Dietary Guidelines much more difficult to accomplish, requiring CSPI to undertake on its own much of the work for which it was previously able to rely on USDA. As a result, CSPI already has diverted significant staff

time and resources from other organizational priorities in order to help fill the gaps left by

USDA.  In an effort to replicate the initiatives it once undertook in partnership with USDA, CSPI

already has taken steps to identify target audiences; develop suitable services to educate schools

on the Guidelines' sodium and whole grain recommendations; and to mobilize partners and

parents to encourage schools to maintain standards in line with the Dietary Guidelines,

notwithstanding USDA's weakened standards.  Of course, even with the organization's most

resource-intensive efforts, CSPI will not be able to replicate the impact of prior initiatives

lacking the help, nationwide reach, and imprimatur of USDA.

65.    The Rollback Rule has also harmed and will continue to harm CSPI by creating

an informational gap regarding whether schools are meeting the whole grain and sodium

recommendations in the Dietary Guidelines, or are falling short.  Under the School Nutrition

Rule, schools were obligated to provide meals that were consistent with the Dietary Guidelines'

whole grain and sodium recommendations on the required, phased timeline.  To qualify for

additional reimbursement consistent with the School Nutrition Rule, each school district was also

required to certify (*see* 42 C.F.R. § 210.7) that it was meeting the school meal standards, which

in turn indicated compliance with the Guidelines.  Thus, CSPI had access to data regarding the

scale of school meal compliance with the Guidelines and was able to work with USDA to help

the entire community of participating schools make concrete, measurable progress towards these

goals.  But under the Rollback Rule, those data are now unavailable because CSPI can no longer

rely on compliance with USDA standards as a measure of compliance with the Guidelines.

Accordingly, CSPI has no way of knowing whether schools are backsliding on whole grains and

sodium.  This information gap is especially pronounced with respect to whole grains.  Under the

prior regime, schools not complying with the Guidelines would seek a waiver from their state

agencies on a product-by-product basis: this yielded specific data on whole grains compliance that CSPI was able to access.  Under the Rollback Rule, schools are no longer required to seek a waiver to depart from the Guidelines' 100 percent whole-grain rich requirement, making it far more difficult (if not impossible) for CSPI to know how many schools are failing to meet the Dietary Guidelines' whole grain recommendations.

66.     In response, CSPI has been compelled to dedicate valuable staff time and resources to conducting its own informational outreach to state child nutrition directors and school districts to ascertain their plans for whole grains and sodium reduction—information that CSPI relies on to appropriately target further services to districts that are in danger of failing to meet the Guidelines' recommendations for sodium and whole grains.  But for USDA's decision to issue the Rollback Rule, CSPI would not have had to undertake these data-collection efforts.

67.     CSPI's activities are also impaired by the misinformation that is a direct result of the Rollback Rule's departure from the statutory requirement that school meals comply with the Guidelines.  In departing from the Guidelines' sodium and whole grain-rich requirements, the agency has created the incorrect public impression that the weakened standards are lawful and that there is no harm to students when schools comply only with the weakened standards.  To counteract the false impression that departing from the Guidelines is either acceptable or healthy, CSPI has had to (and is continuing to) undertake numerous public education, outreach and training efforts for a wide range of audiences (*e.g.*, CSPI's members, the public, school nutrition constituencies, and state and local governments).  Such efforts are necessary to explain anew that the Guidelines' recommendations for sodium reduction and whole grains are grounded in nutrition science, that the USDA's new standards are no longer tied to the Guidelines' recommendations, and that failing to meet these recommendations would have significant health

consequences.  These activities have included (and continue to include) preparing various new educational materials and assisting partner organizations working with schools in procuring Guidelines-compliant lower sodium and whole grain-rich products.  But for the Department's Rollback Rule, CSPI would not have needed to undertake these extensive efforts.

68.     Finally, CSPI has been injured by USDA's failure to give fair notice in the IFR that the agency was considering, among other things, eliminating Target 3 for sodium reduction or weakening the whole grains standard to require only that 50 percent of grains be whole grain-rich.  Had CSPI had proper notice of these contemplated changes to the School Nutrition Rule, it would have submitted additional comments concerning, among other things, the significant public health consequences and adverse effect on the school foods marketplace that are the inevitable result of these changes.

69.     In multiple ways, the Rollback Rule also directly conflicts with, impairs, and frustrates HSFM's mission and activities by impeding its ability and efforts to improve school nutrition, including its efforts to optimize the Guidelines' impact on school meals.

70.     As a direct result of the Rollback Rule, HSFM now has to work much harder to influence schools and educate its parent members and the public about school nutrition because it must bridge the information gap with respect to which schools are meeting the whole grain and sodium recommendations in the Dietary Guidelines.  Similar to CSPI (*see supra* ¶ 65), the prior regulatory regime enabled HSFM to rely on data regarding school meal compliance with USDA standards, which in turn indicated compliance with the Dietary Guidelines.  But under the School Nutrition Rollback Rule, compliance with USDA standards no longer indicates compliance with the Guidelines, making it impossible for HSFM to know whether schools are, or are not, meeting the Guidelines' recommendations.  This reduces the force and effect of HSFM's programming

and undermines the usefulness of HSFM's summaries of current USDA regulations as a tool to promote compliance with the Guidelines, as parents can no longer assume that schools which meet USDA standards are also in compliance with the Guidelines.  In response, HSFM has been compelled to divert valuable staff time and resources from other organizational tasks to revising its programs.  For example, in direct response to the Rollback Rule, HSFM has begun conducting (and continues to conduct) outreach to school districts across the state to obtain information concerning plans to reverse progress on sodium reduction and whole gains, so that it can assess how best to adapt its efforts to keep parents and the public apprised of the sodium and whole grains content of school meals in these districts.  HSFM's newly adapted efforts have already entailed (and will continue to entail) evaluating the nutrition content of individual school menu items that districts contemplate offering in the future, to assess Guidelines compliance.

71.     HSFM also has been forced to devote organizational time and resources to revising its School Food Environment Grades in an effort to fill the information vacuum created by the new USDA rule and encourage schools to continue compliance with the Guidelines.  As noted above, the School Food Environment Grades did not previously rate schools on the sodium and whole grains content of their meals.  Under the Rollback Rule, however, the federal standards are no longer tied to achieving compliance with the Dietary Guidelines.  In response, HSFM has already made preparations to supplement the survey that is the basis for the School Food Environment Grades with additional questions probing districts' plans with respect to the newly weakened sodium and whole grains standards.  HSFM is taking further steps to revise the rubric to award additional points to districts that commit to not roll back standards in response to the new rule.  But for the Rollback Rule, HSFM would not have had to revise its School Food Environment Grades in this manner.

72.     HSFM's activities are additionally impaired by the misinformation (*see supra* ¶ 67) that is a direct result of the Rollback Rule's departure from the statutory requirement that school meals comply with the Guidelines.  HSFM has had (and will continue) to dedicate time and resources to counteract the false impression created by the Rule that departing from the Guidelines' recommendations is either acceptable or healthy by, among other things, preparing educational materials on the rollbacks for its parent members, organizing a school foods panel focused on the harmful effects of the newly weakened standards, and expressing concerns to local school board and statewide bodies.

73.     Finally, HSFM has been injured by USDA's failure to give fair notice in the IFR that the agency was considering, among other things, eliminating Target 3 for sodium reduction or weakening the whole grains standard to require only that 50 percent of grains be whole grain-rich.  Had HSFM had proper notice of these contemplated changes to the School Nutrition Rule, it would have submitted additional comments concerning, among other things, the harmful health effects of higher sodium consumption and lower levels of whole grains.

**Claim for Relief**

**Count One**
**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2))**

74.     The Administrative Procedure Act ("APA") requires this Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

75.     The School Nutrition Rollback Rule is final agency action.

76.     The School Nutrition Rollback Rule is arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law, in contravention of the APA, in at least the

following ways, because Defendants:

    a.  acted outside their statutory authority and in contravention of their statutory duty to issue regulations based on nutrition science, as set forth in the Dietary Guidelines and IOM Report;

    b.  failed to acknowledge, or provide a reasoned explanation for, a significant change in their interpretation of school lunch and breakfast program statutes, a view that had engendered reliance interests by multiple parties and stakeholders;

    c.  failed to provide a reasoned explanation for changing the 2012 sodium and whole grains standards;

    d.  failed to respond adequately to comments and improperly limited the comments considered;

    e.  failed to consider important aspects of the problem before them and relied on factors other than those Congress directed them to consider;

    f.  failed to consider or address plausible alternatives submitted in response to the IFR; and

    g.  made findings and conclusions that are unsupported by the record.

### Count Two
### (Violation of the Administrative Procedure Act, 5 U.S.C. § 553)

77.     The APA requires an agency to publish "either the terms or substance of the

proposed rule or a description of the subjects and issues involved" in its proposed rulemaking

and "give interested persons an opportunity to participate in the rule making."  5 U.S.C.

§ 553(b)(3), (c).

78.     The APA requires this Court to "hold unlawful and set aside agency findings, and

conclusions found to be … without observance of procedure required by law."  5 U.S.C.

§ 706(2)(D).

79.     Defendants neither described nor gave notice of important aspects of the School Nutrition Rollback Rule in the IFR, including that they were considering fully eliminating Target 3 for sodium, delaying the compliance date for Target 2 so substantially, and substituting a blanket requirement that only 50 percent of grains be whole grain-rich instead of the existing 100 percent whole grain-rich requirement, either alone, or paired with the exemption process.  That failure of notice prejudiced Plaintiffs and other commenters, who would have submitted information explaining why the rollbacks ultimately adopted by the agency were unsound legally and as a policy matter, and harmful to child health.

80.     Accordingly, the School Nutrition Rollback Rule violates 5 U.S.C. § 553 and was not a logical outgrowth of the IFR, and therefore should be declared unlawful and set aside under the APA, 5 U.S.C. § 706(2).

**Count Three**
**(Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1))**

81.     The APA provides that a court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

82.     Congress has imposed a mandatory, non-discretionary duty on the Secretary of Agriculture to promulgate school nutrition regulations, by a date certain, that are based on nutrition science, as set forth in the Dietary Guidelines and IOM Report.

83.     Because the Rollback Rule is not based on the Dietary Guidelines or IOM Report, Defendants are currently in contravention of that statutory duty, and have therefore unlawfully withheld and/or unreasonably delayed agency action.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray that this Court:

1.      declare that the School Nutrition Rollback Rule is arbitrary, capricious, an abuse of
discretion, or contrary to law insofar as it delays sodium-reduction Target 2, rescinds
sodium-reduction Target 3, and eliminates the 100 percent whole grain-rich
requirement;

2.      vacate the portions of the School Nutrition Rollback Rule related to sodium and
whole grains;

3.      order Defendants to reinstate the sodium and whole grain requirements originally
established in the School Nutrition Rule, or otherwise promulgate regulations which
set sodium and whole grain requirements that are based on the Dietary Guidelines and
the IOM Report;

4.      award Plaintiffs their costs and reasonable attorney fees; and

5.      grant all other appropriate relief.

Dated: April 3, 2019                              Respectfully submitted,

                                                  /s/ Conrad Bolston

Karianne M. Jones* (D.C. Bar No. 187783)          Jeremy Marwell* (D.C. Bar No. 1000299)
Josephine Morse* (D.C. Bar No. 1531317)           Conrad Bolston (MD Bar No. 19854)
Democracy Forward Foundation                      Kristen Miller* (D.C. Bar No. 229627)
P.O. Box 34553                                    Vinson & Elkins LLP
Washington, D.C. 20043                            2200 Pennsylvania Avenue, N.W.
(202) 448-9090                                    Suite 500 West
jmorse@democracyforward.org                       Washington, D.C. 20037
kjones@democracyforward.org                       (202) 639-6500
                                                  jmarwell@velaw.com
                                                  cbolston@velaw.com
                                                  kmiller@velaw.com

                                                  *Counsel for Plaintiffs*

                                                  *Motion for Admission *Pro Hac Vice* forthcoming